UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KARRIE ANN SPERAW, | ) | CIVIL ACTION NO. 1:20-CV-2251 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff Karrie Ann Speraw ("Speraw") seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her claim for supplemental security income benefits under Title XVI of the Social Security Act. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties have consented to have a Magistrate Judge conduct all proceedings in this case. (Doc. 8).

For the reasons set forth below, we will affirm the Commissioner's decision.

## II.   BACKGROUND AND PROCEDURAL HISTORY

On September 21, 2018, Speraw protectively filed[1] an application for Social Security disability benefits, alleging disability beginning July 1, 2018. (Admin. Tr.

---

[1] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-cv-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017). "A protective filing

15; Doc. 10-2, p. 16). Speraw's claim was initially denied on January 28, 2019. *Id*. On February 13, 2019, Speraw filed a written request for a hearing. *Id.* The hearing was held on October 22, 2019, in Harrisburg, Pennsylvania, and Speraw appeared and testified with the assistance of counsel. *Id.*

On March 9, 2020, Administrative Law Judge Scott Staller (the "ALJ") issued his determination that Speraw was not disabled within the meaning of the Social Security Act from September 21, 2018, through the date of the decision. (Admin. Tr. 26; Doc. 10-2, p. 27). Speraw appealed the ALJ's decision to the Appeals Council, which denied her request for review on October 8, 2020. (Admin. Tr. 1; Doc. 10-2, p. 2). This makes the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

On December 2, 2020, Speraw began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence and is contrary to law and regulation. (Doc. 1, ¶¶ 17-30). Speraw requests that the court find that she is entitled to Social Security benefits or remand the case for further proceedings. (Doc. 1, p. 6); (Doc. 15, p. 25). The Commissioner filed an answer to the complaint and a transcript of the proceedings that occurred before the Social Security Administration. (Docs. 9, 10). This case was directly assigned to a

---

date allows an individual to have an earlier application date than the date the application is actually signed." *Id*.

Magistrate Judge. On March 24, 2021, the parties consented to have a Magistrate Judge conduct all further proceedings in this case. (Doc. 8). Plaintiff's brief (Doc. 15), and the Commissioner's brief (Doc. 16) have been filed. Plaintiff did not file a reply. This matter is ripe for decision.

## III.   LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals. We will also discuss the standards relevant to the resolution of the specific issues Speraw raises in this case.

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner."[2] But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings.[3] "[T]he threshold for such evidentiary sufficiency is not high."[4] Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[5]

---

[2] *Ficca v. Astrue*, 901 F.Supp.2d 533, 536 (M.D. Pa. 2012).

[3] *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).

[4] *Biestek*, 139 S. Ct. at 1154.

[5] *Id*. (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla."[6] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[7] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding from being supported by substantial evidence."[8] "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."[9]

The question before this Court, therefore, is not whether Speraw is disabled, but whether substantial evidence supports the Commissioner's finding that she is not disabled and whether the Commissioner correctly applied the relevant law.

### B.   INITIAL BURDENS OF PROOF, PERSUASION, AND ARTICULATION FOR THE ALJ

To receive benefits under Title XVI of the Social Security Act by reason of disability, a claimant generally must be "unable to engage in any substantial gainful

---

[6] *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[7] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[8] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[9] *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[10] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[11]

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled.[12] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC").[13]

---

[10] 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

[11] 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

[12] 20 C.F.R. § 416.920.

[13] 20 C.F.R. § 416.920(a)(4)(i)–(v).

Between steps three and four, the ALJ must also assess a claimant's RFC.[14] The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'"[15] In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[16]

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process.[17] But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity."[18]

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory

---

[14] 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity.").

[15] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. § 416.945(a)(1).

[16] 20 C.F.R. § 416.945(a)(2).

[17] *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).

[18] *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

explication of the basis on which" his or her decision rests.[19] "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."[20] The "ALJ may not reject pertinent or probative evidence without explanation."[21] Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'"[22]

### C.   OVERVIEW OF THE REGULATIONS REGARDING OPINION EVIDENCE

The regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated.[23] Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy

---

[19] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

[20] *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999).

[21] *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008).

[22] *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

[23] *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021).

of medical source opinions with treating sources at the apex of this hierarchy."[24] But under the new regulations, "[t]he range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis."[25]

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion.[26] And if a treating source's medical opinions on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record, the Commissioner "will give it controlling weight."[27] Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors, including: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, the specialization of the source, and any other relevant factors.[28]

---

[24] *Id.*

[25] *Id.*

[26] 20 C.F.R. §§ 404.1527(c), 416.927(c).

[27] 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[28] 20 C.F.R. §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

Under the new regulations, however, the Commissioner will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings, including those from the claimant's medical sources.[29] Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions.[30] And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion.[31] The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion.[32] As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical

---

[29] 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

[30] 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

[31] 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

[32] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

finding(s) will be."[33] And as to consistency, those regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."[34]

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion.[35] Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors.[36] But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.[37]

### D.   GUIDELINES FOR THE ALJ'S EVALUATION OF MEDICAL DETERMINABILITY AT STEP TWO

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairment is (1) medically determinable or non-medically determinable, and (2) severe or non-severe; this step is essentially a threshold test.[38]

---

[33] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[34] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[35] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

[36] *Id.*

[37] 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3).

[38] 20 C.F.R. § 416.920(a)(4)(ii).

To be considered medically determinable, an impairment must be established by objective medical evidence from an acceptable medical source.[39] A claimant's statement of symptoms, a diagnosis that is not supported by objective evidence, or a medical opinion not supported by objective evidence, is not enough to establish the existence of an impairment.[40] A claimant's symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect a claimant's ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment is present.[41]

Symptoms or limitations that a claimant alleges are caused by a non-medically determinable impairment are excluded from an ALJ's RFC assessment.

### E.   EVALUATING CHALLENGES TO AN ALJ'S RFC ASSESSMENT

One oft-contested issue in Social Security Appeals relates to the claimant's residual capacity for work in the national economy. A claimant's RFC is defined as the *most* a claimant can still do despite his or her limitations, taking into account all of a claimant's medically determinable impairments.[42] In making this assessment, the ALJ is required to consider the combined effect of all medically determinable

---

[39] 20 C.F.R. § 416.921.

[40] 20 C.F.R. § 416.921; 20 C.F.R. § 416.902.

[41] 20 C.F.R. § 416.929(b).

[42] 20 C.F.R. § 416.945.

impairments, both severe and non-severe.[43] An "RFC assessment must include a narrative discussion of how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[44] The ALJ is required to discuss the claimant's ability to perform sustained work activity in an ordinary work setting on a regular and continuing basis (8-hours per day, 5-days per week), and describe the maximum amount of each work-related activity the claimant can perform based on the evidence available in the case record.[45] The ALJ is also required to explain how any material inconsistencies in the case record were considered and resolved.[46]

Although such challenges most often arise in the context of challenges to the sufficiency of vocational expert testimony, the law is clear that an RFC assessment that fails to take all of a claimant's credibly established limitations into account is defective.[47] Moreover, because an ALJ's RFC assessment is an integral component

---

[43] 20 C.F.R. § 416.945.

[44] SSR 96-8p, 1996 WL 374184 at *7.

[45] *Id.*

[46] *Id.*

[47] *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005) (noting that an argument that VE testimony cannot be relied upon where an ALJ failed to recognize credibly established limitations during an RFC assessment is best understood as a challenge to the RFC assessment itself); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) (noting that an ALJ must include in the RFC those limitations which he finds to be credible).

of his or her findings at steps four and five of the sequential evaluation process, an erroneous or unsupported RFC assessment undermines the ALJ's conclusions at those steps and is generally a basis for remand.

## IV.   DISCUSSION

Speraw raises the following issues in the statement of errors section of her brief:

(1)   "Whether the Administrative Law Judge erred and abused his discretion by failing to consider the limitations in Plaintiff's residual functional capacity from those impairments that the Administrative Law Judge considered to be severe, including degenerative disc disease of the lumbar spine, obesity, and Bi-Polar Disorder," (Doc. 15, p. 1);

(2)   "Whether the Administrative Law Judge erred an abused his discretion in failing to consider the limitations from those conditions that the Administrative Law Judge did not consider to be severe, or barely mentioned in his decision, in setting forth Plaintiff's residual functional capacity, including Plaintiff's AD/HD, anxiety, and major depressive disorder," (Doc. 15, pp. 1-2); and

(3)   "Whether the Administrative Law Judge erred and abused his discretion by failing to properly weigh the opinions of Plaintiff's Treating Source, Dr. Jenny Lee, who complete[d] two separate Physical Residual Functional Capacity Questionnaires in this matter and who has treated Plaintiff since 2001," (Doc. 15, p. 2).

We construe these allegations as raising the following arguments:

(1)   The ALJ did not properly evaluate Dr. Lee's medical opinions;

(2)   The ALJ erred at step two because he did not identify or evaluate generalized anxiety disorder, depressive disorder, or ADHD; and

(3)   Substantial evidence does not support the ALJ's RFC assessment because he did not account for the full measure of Speraw's limitations

in maintaining attention, maintaining attendance, making decisions, carrying out instructions, or interacting with co-workers.

We will begin our discussion by summarizing the ALJ's findings, and then will address Plaintiff's arguments as we have construed them.

### A. THE ALJ'S DECISION DENYING SPERAW'S CLAIM

On March 9, 2020, the ALJ denied Speraw's claim for benefits. (Admin. Tr. 26; Doc. 10-2, p. 27). At step one of the sequential-evaluation process, the ALJ found that Speraw had not engaged in substantial gainful activity since September 21, 2018, the application date. (Admin. Tr. 17-26; Doc. 10-2, pp. 18-27).

At step two of the sequential-evaluation process, the ALJ found that Speraw had the following severe impairments: degenerative disc disease of the lumbar spine, obesity, and bipolar disorder. *Id.* The ALJ also identified asthma, chronic pain syndrome, impaired fasting glucose, and alcohol abuse as medically determinable, non-severe impairments.

At step three of the sequential-evaluation process, the ALJ found that Speraw did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then determined that Speraw has the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) but that Speraw can only "stand and/or walk four hours in an eight[-]hour workday." (Admin. Tr. 19; Doc. 10-2, p. 20). The ALJ provided the following additional limitations:

[Speraw] can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. [Speraw] can occasionally balance, stoop, kneel, crouch or crawl. She can never be exposed to unprotected heights, moving machinery with protective safety guards and vibrations. [Speraw] can understand, remember, or carry out detailed but uninvolved written or oral instructions. She can make deal [sic] with problems involving a few concrete variables on or from standardized situations. [Speraw] can make judgments on detailed but uninvolved written or oral instructions involving a few concrete variables on or from standardized situations. She can occasionally interact with the public, coworkers, and supervisors in a routine work setting.

*Id.* In making this RFC assessment, the ALJ stated that he considered all of Speraw's symptoms and the extent to which the symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence." (Admin. Tr. 20; Doc. 10-2, p. 21). The ALJ stated that he also considered the medical opinions and prior administrative medical findings. *Id.*

At step four, the ALJ determined that Speraw was unable to perform her past relevant work as a short order cook (DOT# 313.374-014) and as a hand packager (DOT# 920.587-018). (Admin. Tr. 24; Doc. 10-2, p. 25).

At step five, the ALJ found that considering Speraw's age, education, work experience, and RFC, there exist jobs in significant numbers in the national economy that Speraw can perform, such as an assembler, electrical accessories I (DOT#

729.687-010), inspector and hand packager[48] (DOT# 559.687-074), and non-governmental mail clerk (DOT# 209.687-026). *Id.* In sum, the ALJ concluded that Speraw was not disabled from September 21, 2018, through the date of decision on March 9, 2020. (Admin. Tr. 25-26; Doc. 10-2, pp. 26-27). Thus, the ALJ denied Speraw SSI benefits. *Id.*

### B.  THE ALJ PROPERLY EVALUATED DR. LEE'S QUESTIONNAIRES

We will first address Speraw's argument that the ALJ improperly evaluated the persuasiveness of the opinions by Speraw's treating source, Dr. Lee. (Doc. 15, p. 20). Speraw argues that the ALJ did not properly evaluate Dr. Lee's opinion under 20 C.F.R. § 404.1527. Speraw argues that the length of her treatment relationship with Dr. Lee weighs in favor of crediting this opinion. She also argues that the ALJ's evaluation of the "supportability" factor is inaccurate because "Dr. Lee set forth specific diagnosis and notations based upon her treatment of Claimant to support these limitations." (Doc. 15, p. 24) (citing Admin. Tr. 1075-1080 and 1118).

As an initial matter, Speraw improperly relies on 20 C.F.R. § 404.1527 to support her argument. Her reliance on this regulation is incorrect for two reasons. First, this regulation applies to applications for benefits under Title II of the Social

---

[48] This "hand packager" job is different from Speraw's previous work as a "hand packager;" the previous work is generally performed at a higher exertional level than the work suggested at Step Five.

Security Act. Speraw is seeking benefits under Title XVI of the Social Security Act. Second, this regulation is applicable to applications filed on or before March 27, 2017. Speraw filed her application in this case on September 21, 2018. (Admin. Tr. 15; Doc. 10-2, p. 16). The applicable regulation in this case is 20 C.F.R. § 416.920c. We will address Speraw's arguments under the applicable regulation.

Here, the ALJ summarized Dr. Lee's findings about Speraw's physical limitations and provided the following explanation for why Dr. Lee's medical opinions were not persuasive:

> These statements are unsupported by Dr. Lee's treatment notes, which largely show the claimant has normal gait, negative straight leg raising test, and non-tender spine (C23F). These statements are also unsupported because they are checklists or conclusory statements with minimal explanation. Additionally, these statements are inconsistent with the longitudinal treatment notes, which generally show the claimant is in no acute distress with normal gait, full range of motion, full strength, intact sensation, negative straight leg raising test, normal reflexes, no clubbing, no cyanosis, and no edema (C13F; C17F; C23F; C26F). Further, these statements are inconsistent with the claimant's activities of daily living, which shows the [sic] she helps care for her dog and can prepare simple meals, do laundry, take out trash, drive, and shop in stores (Hearing Testimony; C4E; C5E). Accordingly, the undersigned finds Dr. Lee's statements are not persuasive.

(Admin. Tr. 23; Doc. 10-2, p. 24).

First, Speraw argues that the length of her treatment relationship with Dr. Lee makes the opinion more persuasive. Speraw argues, and the record supports, that Dr. Lee has treated Speraw since 2001. (Admin. Tr. 1113; Doc. 10-16, p. 22). In

response, the Commissioner argues that the ALJ met the articulation requirements under 20 C.F.R. § 416.920c and that the record supports his conclusions regarding the persuasiveness of Dr. Lee's questionnaires.

We agree that the ALJ met the articulation requirements of 20 C.F.R. § 416.920c. We also find that the ALJ's opinion implies that he considered, and was aware of, Speraw's treatment relationship with Dr. Lee. He refers to Dr. Lee as Speraw's "primary care provider," and references Dr. Lee's treatment records (found at Exhibits C14F, C23F, and C26F) in the decision. (Admin. Tr. 22-23; Doc. 10-2, pp. 23-24). Therefore, we find that the ALJ properly articulated the persuasiveness of the decision, and considered the treatment relationship.

Second, Speraw argues that the ALJ's evaluation of "supportability" is inaccurate because Dr. Lee's opinions were well-explained. In evaluating supportability, an ALJ reviews how relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinions.[49] Here, the ALJ evaluated the supportability of Dr. Lee's medical opinion when the ALJ stated that the opinions were "conclusory statements with minimal explanation." (Admin. Tr. 23; Doc. 10-2, p. 24). In other words, the ALJ

---

[49] 20 C.F.R. § 416.920c(c)(1).

indicated that there was little supporting explanation or medical evidence presented by Dr. Lee to support the medical opinion.

Dr. Lee's opinions appear at exhibits C19F and C22F of the administrative record. (Admin. Tr. 1075-180; Doc. 10-15, pp. 99-104); (Admin. Tr. 1113-1118; Doc. 10-16, pp. 22-27). Plaintiff argues that Dr. Lee set forth specific diagnoses. (Doc. 15, p. 24). We agree. The opinions list diagnoses of obesity, impaired glucose, asthma, and lumbar degenerative disc disease. These diagnoses were credited and found to be medically determinable by the ALJ. Speraw also generally argues that the opinions included "notations based upon her treatment to support these limitations." (Doc. 15, p. 24). Speraw does not identify the "notations" she is referring to, or identify what limitations they support. With respect to the limitations in sitting, standing, lifting, carrying, postural activities, use of hands and arms, and ability to maintain attendance, Dr. Lee offered no supporting notations. Accordingly, we find that the ALJ's explanation adequately characterizes Dr. Lee's responses in the questionnaires.

### C.   REMAND IS NOT REQUIRED FOR FURTHER EVALUATION OF THE ALJ'S FINDINGS AT STEP TWO

Speraw argues that the ALJ's RFC assessment is not based on substantial evidence because the ALJ failed to consider limitations caused by, and even failed to sufficiently discuss, Speraw's AD/HD, anxiety, and major depressive disorder.

(Doc. 15, p. 18). We construe this as an argument that the ALJ failed to identify and evaluate whether these impairments were medically determinable at step two.

In her brief, the Commissioner contends that the ALJ did not err in finding these impairments non-severe because the ALJ "provided a detailed discussion of Plaintiff's mental health symptoms, including her subjective reports of anxiety, panic attacks, and difficulties with concentration, attention, memory, and completing tasks" and "was not required to develop the record regarding Plaintiff's anxiety and depressive disorders." (Doc. 16, pp. 20-22) (citing Admin Tr. 20-21). With regard to the latter reasoning, the Commissioner appears to mean that the ALJ did not have evidence of Speraw's AD/HD, anxiety, and major depressive disorder.

We begin analysis of this alleged error by addressing whether the ALJ did address Speraw's AD/HD, anxiety, and major depressive disorder. At Step Two in his decision, the ALJ provided the following analysis:

> The claimant has the following severe impairments:  degenerative disc disease of the lumbar spine; obesity; and bipolar disorder (20 CFR 416.920(c)).
>
> The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.
>
> The record shows the claimant has a history of asthma, chronic pain syndrome, impaired fasting glucose, and alcohol abuse (C13F; C23F). Medication manages the claimant's asthma (C13F), and in September 2018, the claimant's primary care provider noted "[c]ondition improved. Continue current prescription medications since it's [sic] working well" (C14F/10). Medication treats her chronic pain syndrome

(C23F). Diet manages her impaired fasting glucose (C23F). Medication and counseling treats [sic] her alcohol abuse (C13F), and there is limited evidence of the record the claimant engaged in ongoing alcohol use since they alleged onset date except for binge drinking with her father. There is little evidence of record these impairments more than minimally limit the claimant's ability to perform sustained work tasks. Thus the undersigned finds these conditions are non-severe impairments.

(Admin. Tr. 17-18; Doc. 10-2, pp. 18-19). The ALJ makes no mention of Speraw's AD/HD or anxiety at Step Two. *Id.*

It is well established in this Circuit that "[a]n ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence."[50] Furthermore, an ALJ's failure to determine whether an impairment is medically determinable can be grounds for remand.[51]

---

[50] *Rutherford v. Barnhart*, 399 F.3d 546, 552–53 (3d Cir. 2005) (quoting *Skarbek v. Barnhart,* 390 F.3d 500 (7th Cir. 2004) (*per curiam*)).

[51] *Casiano v. Colvin*, No. 3:13-CV-2141, 2014 WL 6633109, at *13–14 (M.D. Pa. Nov. 21, 2014) ("[A]n ALJ's failure to mention all medically determinable impairments renders the ALJ's RFC determination at step four as defective . . . . Plaintiff is correct that the ALJ had the duty to acknowledge or explain why he was discounting Plaintiff's Antisocial Personality Disorder as it was a medically determinable impairment. Consequently, the ALJ's decision was defective at step two . . . ."); *Melius v. Colvin*, No. CIV.A. 12-848, 2013 WL 5467071, at *2–3 (W.D. Pa. Sept. 30, 2013) ("Because the ALJ failed to acknowledge, let alone evaluate, plaintiff's medically determinable impairment of sleep apnea, either alone or in combination with plaintiff's other impairments, both severe and not severe, at any step in the sequential evaluation process, this case must be remanded to the Commissioner for further proceedings."); *Watson v. Colvin*, No. 3:15-CV-1592, 2017 WL 770621, at *12–13 (M.D. Pa. Feb. 28, 2017) (collecting cases); *Christenson v. Astrue*, No. 4:10-CV-1192, 2011 U.S. Dist. LEXIS 110315, at *15 (M.D. Pa. May 18, 2011) ("The failure of the administrative law judge to find the

Here, Speraw cites only to the following as demonstration that the ALJ should have found the medically determinable impairments of major depressive disorder, ADHD, and generalized anxiety disorder:

(1) December 9, 2013 treatment record that contains a diagnosis of Major Depressive Disorder with psychotic symptoms under Axis I, without any explanation, and a treatment note that states: "The patient brought a not [sic] from her doctor where she was diagnosed with ADHD, Depressive Disorder, NOS . . . . This letter was dated December 26, 2012 . . . . She says that although at times she feels anxious, her anxiety is under control." (Admin. Tr. at 668; Doc. 10-11, p. 25). The same record also includes a note that the physician would not prescribe any ADHD medication to claimant at that time. (Admin. Tr. 669; Doc. 10-11, pp. 26-27).

(2) A February 8, 2017 treatment note indicating under the heading of "problem/condition" that Speraw had worsening mood and no change to anxiety. (Admin. Tr. 880; Doc. 10-14, p. 15). As far as diagnoses, the record says "no change see initial evaluation record." (Admin. Tr. 879; Doc. 10-14, p. 14). The "initial evaluation" by the same clinician includes diagnoses of Bipolar I, alcohol abuse disorder (uncomplicated), asthma, and arthritis due to back surgeries. (Admin. Tr. 887; Doc. 10-14, p. 22).

(3) A July 8, 2019 treatment note indicating a depressed mood, worsening depression, improving anxiety, mood swings, and later, a depressed and anxious mood with worsening depression and anxiety. (Admin. Tr. 1168-1170; Doc. 10-16, pp. 78-79). This treatment note adds a diagnosis of binge drinking to the diagnoses already documented in the initial evaluation (Bipolar I, alcohol abuse disorder (uncomplicated), asthma, and arthritis due to back surgeries). *Id.*

---

above noted conditions as medically determinable impairments, or to give an adequate explanation for discounting them, makes the subsequent steps of the sequential evaluation process defective.").

(4)   An August 5, 2019 treatment note on which a doctor checked a box indicating Speraw had worsening depression and improving anxiety. (Admin. Tr .1102-03; Doc. 10-16, pp. 11-12). Like the February 8, 2017 note, this record also references the diagnoses in the initial evaluation (Bipolar I, alcohol abuse disorder (uncomplicated), asthma, and arthritis due to back surgeries). (Admin. Tr. 1102; Doc. 10-16, p. 11).

(5)   An August 15, 2019 a therapy note indicating Speraw reported struggles with depression and anxiety and a therapist noted anxious appearance. (Admin. Tr. 1157; Doc. 10-16, p. 66). This therapy note does not include any diagnoses.

The first treatment record predates Speraw's alleged onset date (July 1, 2018) by five years. Therefore, we find no error where the ALJ did not address these diagnoses. The more recent mental health records suggest that Speraw was diagnosed with and treated for Bipolar I disorder, alcohol abuse disorder, and binge drinking. Although Speraw reported *symptoms* of anxiety and depression, Speraw has cited no evidence that her diagnoses during the relevant period include generalized anxiety disorder, major depressive disorder, or ADHD. Accordingly, we find that the ALJ did not err at step two.

### D.   SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC ASSESSMENT

We will next address Speraw's argument that the ALJ's RFC assessment is not based on substantial evidence because the ALJ failed to consider limitations caused by Speraw's severe impairments, including degenerative disc disease of the lumbar spine, obesity, and bipolar disorder. (Doc. 15, p. 11).

In the RFC assessment, the ALJ found that Speraw could: "understand, remember, or carry out detailed but uninvolved written or oral instructions," "make judgments on detailed but uninvolved written or oral instructions involving a few concrete variables or from standardized situations," and can "occasionally interact with the public, coworkers, and supervisors in a routine work setting." (Admin. Tr. 19; Doc. 10-2, p. 20).

Speraw argues these limitations are not enough. Specifically, Speraw alleges that the ALJ failed to account for the symptoms resulting from her cycles of depression and mania due to her bipolar disorder and back pain and any affect upon her ability to remain on task, absenteeism, need for unscheduled breaks, and ability to sustain employment over time, make decisions, carry out instructions, and interact with co-workers or supervisors. (Doc. 15, pp. 16-18). In support of this argument, Speraw provides a series of numbered lists. First, Speraw lists fifteen symptoms she asserts are supported by her medical records. (Doc. 15, p. 14). Second, she lists twenty-one symptoms and limitations supported by her testimony. (Doc. 15, p. 15).

The Commissioner contends that Speraw is asking this Court to reweigh evidence, that the ALJ adequately accounted for Speraw's degenerative disc disease of the lumbar spine, obesity, and bipolar disorder when formulating the RFC, and that the ALJ properly relied on the medical opinion of state agency psychological

consultant Dr. Lease and even assessed greater limitations than those found by consultative psychologist Dr. Rosas. (Doc. 16, pp. 16-19).

With regard to this alleged error, we find the Commissioner's argument persuasive. The ALJ provided the following analysis with regard to the limiting effects of Speraw's severe impairments:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because of the following reasons. The claimant argues she is unable to work because she has severe pain; her legs shake; and she has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, and climbing stairs. She claims she must rest a few minutes after walking no more than ten minutes, walking and standing is painful, and has trouble lifting a milk jug (Hearing Testimony; Supplemental Hearing Testimony; C4E; C5E). The record shows the claimant has degenerative disc disease of the lumbar spine and obesity (C13F). In September 2018, the claimant's BMI was 33.1, which is considered obese (C14F/10). For these conditions, the claimant received branch nerve blocks and medication (C13F). Longitudinal treatment notes do not support the claimant's allegations. These notes generally show the claimant is in no acute distress with normal gait, full range of motion, full strength, intact sensation, negative straight leg raising test, normal reflexes, no clubbing, no cyanosis, and no edema (C13F; C17F; C23F; C26F). An August 2018 lumbosacral X-ray revealed mild degenerative disc changes and moderate lower lumbar facet arthropathy (C13F/13). There is minimal evidence of record the claimant received recent surgical intervention or physical therapy. The claimant's allegations are also inconsistent with her activities of daily living. She states she helps care for her dog and can prepare simple meals, do laundry, take out trash, drive, and shop in stores. She notes she attends medical appointments and visits friends (Hearing Testimony; C4E; C5E). The record includes the testimony of Peter Schosheim, MD, an independent medical expert, that the claimant can perform light work; stand and/or walk four hours total in an eight-hour workday; occasionally balance, kneel, crouch, crawl, climb ramps and stairs, and never climb ladders,

ropes, or scaffolds. Dr. Schosheim stated the claimant has no reaching, manipulative, visual, or communicative limitations, but should avoid heavy vibrations, hazardous machinery, or unprotected heights (Supplemental Hearing Testimony). Therefore, the undersigned finds the claimant can perform light work except she can stand and/or walk four hours in an eight-hour workday. She can occasionally balance, stoop, kneel, crouch, crawl, climb ramps or stairs, and climb ladders, ropes or scaffolds. She can never be exposed to unprotected heights, moving machinery with protective safety guards, or vibrations.

The claimant alleges she needs reminders to change clothes; cannot manage money; gets angry fast; and has difficulty completing tasks, concentrating, understanding, following instructions, and getting along with others. She claims she can pay attention no more than ten minutes, does not finish what she starts, does not handle stress or changes in routine well, has memory problems, is anxious, her mind wonders, and she has panic attacks. The claimant insists she is paranoid about what others say about her and has crying spells (Hearing Testimony; Supplemental Hearing Testimony; C4E; C5E). The record shows the claimant has bipolar disorder. For these conditions, the claimant received counseling and medication (C15F). Progress notes do not support the claimant's allegations. These notes mostly show the claimant is fully oriented and cooperative with normal mood, normal affect, normal speech, goal-directed and logical thought processes, normal behavior, normal thought content, intact memory, fair insight, and fair judgment (C13F; C16F; C17F; C21F; C23F; C24F; C26F; C28F). During a January 2019 mental status consultative examination, the claimant was fully oriented, casually dressed, and cooperative with normal posture, normal motor behavior, and appropriate eye contact. She had intelligibility fluent speech, clear quality of voice, and adequate expressive and receptive language. She had coherent and goal directed thought processes with no hallucinations, no delusions, and no paranoia. She had full range of affect, euthymic mood, clear sensorium, intact attention and concentration, and intact recent and remote memory skills. She had average intellectual functioning, appropriate general fund of information, fair insight, and good judgment (C18F). In December 2018, the claimant's counselor noted the claimant was "[s]table on meds" (C21F/19). In September 2019, the claimant's counselor indicated the claimant "reported she was doing much better

and she has been using coping skills more often" (C24F/4).  There is minimal evidence of record the claimant received recent inpatient mental health treatment.   The claimant's allegations are also inconsistent with her activities of daily living.  She states she helps care for her dog and can prepare simple meals, do laundry, take out trash, drive, and shop in stores.  She notes she watches television, reads, attends medical appointments, and visits friends (Hearing Testimony; C4E; C5E).  Accordingly, the undersigned finds the claimant has the mental capacity to understand, remember, or carry out detailed but uninvolved written or oral instructions; deal with problems involving a few concrete variables on or from standardized situations; make judgments on detailed but uninvolved written or oral instructions involving a few concrete variables on or from standardized situations. She can occasionally interact with the public, coworkers, and supervisors in a routine work setting.

(Admin. Tr. 21-22; Doc. 10-2, pp. 22-23).

The ALJ provided a thorough discussion of the medical and other evidence of Speraw's medically determinable impairments and the related symptoms. The ALJ compared Speraw's alleged symptoms with medical opinions, mental status exams and longitudinal treatment notes, and Speraw's description of her activities of daily living. (Admin. Tr. 21-22; Doc. 10-2, pp. 22-23). Speraw has not offered any persuasive basis that undermines this assessment. Her lists of symptoms and limitations are not enough to undermine the ALJ's assessment. Even assuming that this evidence conflicts with the ALJ's determination that certain limitations are not credibly established, the mere presence of conflicting evidence does not mean that a decision is not supported by substantial evidence. Having found that the ALJ adequately considered and articulated the basis for the limitations set out in the RFC

assessment, and considered Speraw's statements about her limitations, we will not disturb the ALJ's decision.

## V.   CONCLUSION

Accordingly, Plaintiff's request for relief is DENIED AS FOLLOWS:

(1)   The final decision of the Commissioner is AFFIRMED.

(2)   Final judgment will be issued in favor of the Commissioner.

(3)   Appropriate orders will be issued.


Date: March 27, 2023                    BY THE COURT

                                        *s/William I. Arbuckle*
                                        William I. Arbuckle
                                        U.S. Magistrate Judge